UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN A. ENGMAN and
KAREN LUDWICK,

    Appellants,

v.

JAMES W. BOYD,

    Appellee.
_____/

CASE NO. 1:09-cv-151

HON. ROBERT J. JONKER

## OPINION

Appellants John Engman and Karen Ludwick appeal from the bankruptcy court's December 19, 2008 order approving certain settlement agreements between Mr. Engman's bankruptcy estate and its secured creditors. (Notice of Appeal, docket # 1.) Appellee James Boyd, trustee of Mr. Engman's bankruptcy estate, has filed a response. (Docket # 16.) After careful review of the record, the Court has determined that oral argument would not significantly aid the decisional process, and will decide the appeal on the parties' papers. *See* Bankr. App. R. 8012; W.D. Mich. LCivR 7.2(d).

## BACKGROUND

Mr. Engman ("Debtor") filed for Chapter 7 bankruptcy protection in December 2001. Over the last seven and a half years the bankruptcy court, two different trustees for Debtor's estate, two different law firms representing those trustees, the United States Trustee, and even this Court have attempted to accomplish a just and speedy resolution of Debtor's bankruptcy case. By his own admission, Debtor has objected to nearly every attempt to liquidate his estate assets and satisfy his

creditors. (Record Item # 150, Transcript of October 20, 2008 hearing, at 165.) Ms. Ludwick, a creditor of Debtor's estate, has joined in many of his objections and in this appeal. These repeated objections have transformed what should have been a relatively straightforward individual Chapter 7 proceeding into a long and extremely contentious affair requiring almost 600 document entries in the bankruptcy court and multiple appeals to this Court. Appellee Boyd and his predecessor trustee, Thomas Bruinsma, have expended a significant amount of time and money attempting to overcome Debtor's repeated objections and appeals. At some point, the professional fees incurred by Debtor's estate in responding to those objections and appeals may entirely subsume the remaining estate assets. Nevertheless, until that time, Debtor retains standing to contest disposition of estate assets.

The facts underlying the instant appeal are described in detail in the Court's previous opinion in this matter, *see Boyd v. Engman*, 404 B.R. 467 (W.D. Mich. 2009), and three other published opinions issued by the bankruptcy court. *See In re Engman*, 331 B.R. 277 (Bankr. W.D. Mich. 2005) ("*Engman I*"); *In re Engman*, 389 B.R. 36 (Bankr. W.D. Mich. 2008) ("*Engman II*"); *In re Engman*, 395 B.R. 610 (Bankr. W.D. Mich. 2008) ("*Engman III*"). The Court will not restate those facts here. The Court's Opinion includes only those facts necessary to provide context to Debtor's claim that the bankruptcy court erred in its December 19, 2008 order approving five separate settlement agreements between Mr. Boyd, as trustee of Debtor's estate, and various creditors of Debtor's estate.

I. **The Trustee's Global Settlement Motion**

In October 2007, Trustee Boyd brought a so-called "global settlement motion" seeking court approval for settlement agreements he had struck with persons or entities asserting secured claims against Debtor's estate. (Record Item # 113.) The motion included a matrix identifying the different

secured claim holders, the amount claimed by each, the settlement amount, and the net benefit to the estate resulting from each settlement. (*Id.* at 2.) The matrix contained the following figures:

| CLAIM HOLDER | CLAIMED AMOUNT | SETTLEMENT AMOUNT | BENEFIT TO ESTATE |
|---|---|---|---|
| Sun-Da-Go Condo Association | $101,042.80 | $60,000 | $41,042.80 |
| Wrigley & Hoffman | $225,999.61 | $85,708 | $140,291.61 |
| Robert Schellenberg | $78,816.31 | $68,816.31 | $10,000 |
| Michael Quinn P.C. | $30,500 | $26,500 | $4,000 |
| Co-Owners | One-half the net proceeds of Sun-Da-Go | See Settlement Agreement at Exhibit K | See Settlement Agreement at Exhibit K |

(*Id.*). According to this matrix, the total net benefit to Debtor's estate from the proposed settlements was approximately $200,000. Trustee Boyd's motion also contained a detailed analysis of each claim and why the Trustee proposed to settle the claims for the specified amounts. (*See id.*)

Debtor and Ms. Ludwick objected to the trustee's settlement motion. (Record Item ## 115, 116.) The bankruptcy court held an evidentiary hearing to address the motion and objections on October 20, 2008. (Record Item # 150.) Trustee Boyd was represented by counsel and he testified at the hearing. He explained in detail his analysis of the claims against the estate and why he proposed to settle those claims for the specified amounts. Mr. Engman and Ms. Ludwick were present at the hearing, and cross-examined Trustee Boyd on the specifics of the settlements. (*Id.*)

## II. The Bankruptcy Court's December 19, 2008 Order

In December 2008, the bankruptcy court issued a bench opinion approving each of the proposed settlements. (Record Item # 137; Bankruptcy Petition No. 01-13070, docket # 546.) In doing so, the bankruptcy court described the Trustee's efforts to settle the various outstanding

claims, and addressed many of the specific objections raised by Debtor and Ms. Ludwick at the evidentiary hearing. The bankruptcy court considered "whether the disposition proposed is the best alternative available to the estate under the circumstances taking into particular consideration whatever other alternatives the objecting party or parties might propose." (Bench Opinion at 12.) The court noted that, "implicit in that consideration must also be the Court's separate determination of whether the proposed disposition is otherwise consistent with the Trustee's duties as the estate's fiduciary." (*Id.*) The court's opinion addressed each of the proposed settlements individually, and in each case concluded that settlement in the amount identified by the trustee in the claim matrix was the best alternative available to the estate. Debtor and Ms. Ludwick (collectively "Appellants") appealed to this Court. The Court has jurisdiction over the appeal under 28 U.S.C. § 158(a).

## ANALYSIS

### I. Standard of Review

A district court acts as an appellate tribunal when it reviews a decision of the bankruptcy court. *Boyd v. Engman*, 404 B.R. 467, 477 (W.D. Mich. 2009) (citing *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988)). The court reviews factual findings under the clearly erroneous standard, and considers legal conclusions de novo. *Id.*; Fed. R. Bankr. P. 8013. The bankruptcy court has wide discretion to approve or disapprove settlement agreements, and the district court may set aside the bankruptcy court's decision only if that decision constitutes an abuse of discretion. *In re Fishell*, 47 F.3d 1168, 1995 WL 66622, *2 (6th Cir. 1995) (table opinion) (citing *In re A&C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986)). The deferential abuse of discretion standard is necessary because a bankruptcy court's decision to approve a proposed settlement is bound up in the ever-changing facts and circumstances of the bankruptcy case. *See id.*; *American Reserve Corp. v.*

*LaSalle Nat'l Bank*, 841 F.2d 159, 162-63 (7th Cir. 1987). The bankruptcy judge, not the district judge, is "uniquely positioned to consider the equities and reasonableness of a particular compromise." *American Reserve*, 841 F.2d at 162. The district court may set aside the informed judgment of the bankruptcy court only in those rare cases where the settlement approved "achieves such an unjust result as to amount to an abuse of discretion." *In re Anderson*, 377 B.R. 865, 868 (6th Cir. BAP 2007); *see also In re Bell & Beckwith*, 87 B.R. 476, 479 (N.D. Ohio) (noting that a settlement should be upheld unless it "falls below the lowest point in the range of reasonableness.")

## II.     Legal Framework

In deciding whether to approve a proposed comprise between the estate and a creditor, "the bankruptcy court is charged with the affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable." *In re Anderson*, 377 B.R. at 870-71 (quoting *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988)). The term "fair and equitable" is of course subject to many interpretations. The abuse of discretion standard allows the bankruptcy judge to consider myriad factors that may bear on his notion of fairness and equity. *See*, *e.g.*, *American Reserve*, 841 F.2d at 162; *see also Fishell*, 1995 WL 66622 at *3. Whatever the factors the bankruptcy judge considers, the basic inquiry is the same: is the proposed settlement reasonable and in the best interests of the estate? *See id.*; *Bell & Beckwith*, 87 B.R. at 478-79; *A&C Properties*, 784 F.2d at 1382. In making this determination, the bankruptcy judge generally should consider the strength of the claim asserted against the estate, the difficulty, expense, and delay that may come from litigating the claim to judgment, and the corresponding net benefit to the estate and its creditors of settling the claim without litigation. *Anderson*, 377 B.R. at 870-71 (citing *Fishell*, 1995 WL 66622 at *3). The bankruptcy court must

weigh those factors against each other, consider any objections, and determine whether the proposed settlement is fair and equitable. *Id.*; *accord Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968) ("Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.").

### III. Issues on Appeal

Appellants' brief is very difficult to follow. The brief is fifty-one pages long, single-spaced, and does not contain any citations to the record as it appears on appeal.[1] In fact, much of Appellants' brief, from the "Statement of Facts" to the specific issues designated for appeal, contains no record citations of any kind. More importantly, many of the issues raised by Appellants are completely untethered to any aspect of the bankruptcy court's December 19, 2008 Order. Appellants spend a considerable amount of time contesting bankruptcy court decisions made years ago, yet they barely even address the specifics of certain settlement agreements approved in the order they purport to appeal from. Appellants' opening brief (docket # 15) and reply brief (docket # 18) are replete with references to the trustees' alleged mismanagement of estate assets, as well as allegations of perjury against the trustees, their attorneys, and other witnesses to testify throughout the course of this lengthy and contentious bankruptcy proceeding. Appellants request, amongst other things, that the "entire proceeding since inception [be] reversed," that "[t]his Court Order that Debtor be allowed to proceed against the Trustees, and their respective Bonds, for violations of his property rights," and that "this Court refer this matter to an outside jurisdiction so that the legal violations against the Court may be properly investigated." (Appellants' Brief, docket # 15, at 51.) None of these issues

---

[1] Appellants cite to the docket entry numbers in the underlying bankruptcy case, not to the record numbers of the items designated in the appellate record in the notice of appeal.

are properly before the Court on this appeal. The only issue before this Court is whether the bankruptcy court abused its discretion in approving settlement agreements between Debtor's estate and five separate secured creditors of the estate, as reflected in the bankruptcy court's December 19, 2008 Order and the accompanying Bench Opinion. (Record Item ## 5, 137.)

### A. Settlement Agreements with Robert Schellenberg, Wrigley & Hoffman, and Michael B. Quinn, P.C.

Robert Schellenberg, Wrigley & Hoffman, and Michael B. Quinn, P.C. asserted separate secured claims against Debtor's estate. The bankruptcy court approved settlement agreements with each claimant. (Bench Opinion at 16-20.) In each case, the settlement approved was for substantially less than the amount claimed. In total, Trustee Boyd settled these three claims for $154,291.61 less than the claimants were demanding. (*Id.* at 8, 20.) Trustee Boyd's global settlement motion and the bankruptcy court's bench opinion discuss in detail the legal and factual premise underlying each claim. Appellants make little mention of these settlements, and present no evidence or argument that the settlements are unreasonable, unfair, or inequitable. *Cf. In re Fishell*, 47 F.3d 1168, 1995 WL 66622, *3 (6th Cir. 1995) (table opinion). The record reflects that the bankruptcy court independently evaluated the strength of these claims and the probable cost of defending against them. (*See* Bench Opinion at 16-20.) The bankruptcy court determined that settlement was in the best interests of the estate, and Appellants offer no reason to conclude that ruling was an abuse of discretion. Accordingly, this part of the bankruptcy court's order is affirmed.

### B. Settlement Agreement with the Sun-Da-Go Condominium Association

The Sun-Da-Go Condominium Association ("the Condo Association") claims Debtor and his now deceased ex-wife are liable for $101,042.80 in unpaid dues, fees, administrative expenses,

and attorneys fees associated with the Sun-Da-Go development project. (Bench Opinion at 40-41.) Throughout the course of this bankruptcy proceeding, Debtor has repeatedly maintained that the Condo Association is entitled to nothing. In the evidentiary hearing addressing the settlement, Debtor asserted multiple legal theories as to why the Condo Association cannot collect against him or his estate. (Record Item # 150, Transcript of October 20, 2008 hearing.) The bankruptcy court considered those defenses and the other strengths and weaknesses of the Condo Association's claim in ruling on the proposed settlement. After a careful analysis of the salient issues, the bankruptcy court approved Trustee Boyd's decision to settle the claim for $60,000. (Bench Opinion at 41-46.)

On appeal, Debtor and Ms. Ludwick reassert many of the same arguments considered by the bankruptcy court. They argue that the dues were improper because Mr. Engman was entitled to a "developer's exemption" under the Michigan Condominium Act, and that there are no grounds for assessment of the unpaid fees and expenses, including attorney fees. (Appellants' Brief, docket # 15, at 21-29; Appellants' Reply, docket # 18, at 8-11.) But whether Debtor may, under his reading of the law, have a plausible defense to the Condo Association's claim is not the issue on appeal. This appeal concerns only the reasonableness of the settlement approved by the bankruptcy court. *See Fishell*, 1995 WL 66622, *3 (discussing the scope of appellate inquiry into the bankruptcy court's decisions). The strength of the Condo Association's claim–and Debtor's proposed defenses to that claim–bears on this determination, but it is not dispositive of anything. *See id.* Litigation is expensive and risky. Settlement may be beneficial to all parties, even if both sides believe in the merits of their case. The bankruptcy court need not conclusively determine whether and to what extent the Condo Association could recover from Debtor to decide whether settlement is the best option for the estate. Rather, the court need only apprise itself of the relevant issues and make an

informed judgment on the reasonableness of the proposed settlement. *Id.* This Court must review the bankruptcy court's decision under the deferential abuse of discretion standard. *Id.*

In this case, there is nothing in the record to suggest that the bankruptcy judge's approval of the settlement between the trustee and the Condo Association was an abuse of discretion. The bankruptcy court addressed this issue in an eight-hour evidentiary hearing in which it heard testimony from multiple witnesses, including Trustee Boyd. (*See* Record Item # 150.) The parties submitted numerous exhibits, and the court took the matter under advisement for two months. Moreover, because of the parties' previous settlement attempts, *see Engman I*, 331 B.R. 277 (Bankr. W.D. Mich. 2005), the bankruptcy court was very familiar with all aspects of the Condo Association's claim. The court's bench opinion reflects a careful consideration of the strengths and weaknesses of the claim, and the corresponding cost-benefit ratio for the estate if the claim were to be litigated to judgment on the merits. (Bench Opinion at 41-46.) As the bankruptcy court stated:

> [T]his Court is satisfied that the possibility of the estate escaping any liability to the Association by litigating the claim is slim, and that there is a reasonable probability that the Association could establish a combined claim for unpaid Association fees, unfinished development work, and attorney fees and interests, that it would be close, if not equal, to the $60,000 that has been offered in settlement. Moreover, the estate would in all likelihood incur substantial expenses in litigating the Association's claims. . . In addition, Trustee has testified without contradiction that $60,000 is the Association's last offer.

(*Id.* at 43-44.)

Nothing in Appellants' briefs show that their alternative to settlement–defending the claims on the merits–would benefit the estate more than the Trustee's proposed settlement would. The shear breadth of Appellants' argument on appeal demonstrates that Mr. Engman's proposed defenses to the Condo Association's claim raises many complex legal and factual issues. Fully litigating this

claim on the merits could easily exhaust assets that would otherwise be available to pay creditors or, if the estate remains solvent, Debtor himself. *See Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988) (discussing the benefits of settlement in the bankruptcy context); *Fishell*, 1995 WL 66622, at *4 (same). The bankruptcy court's determination that compromise was the most efficient and economical way to resolve the dispute between Debtor and the Condo Association is fully supported by the record. Consequently, this aspect of the bankruptcy court's order is affirmed.

### C. Settlement Agreement with the Co-Owners of the Sun-Da-Go Development

Mr. Engman co-owned the Sun-Da-Go Development with his now deceased ex-wife, Linda Leverich. Prior to her death, Ms. Leverich transferred her interest in the Sun-Da-Go properties to her's and Mr. Engman's daughters, Stephanie Scruggs and Sari Jousma. Trustee Boyd liquidated the Sun-Da-Go properties, and entered into a settlement with Ms. Scruggs and Ms. Jousma whereby they would receive one-half the sale proceeds after the debts associated with the Sun-Da-Go Development had been paid. (Record Item # 113, Global Settlement Motion at 14.) In exchange, Scruggs and Jousma agreed to release all liens and claims against Debtor's estate. (*Id.*, Exhibit L.)

Appellants argue Mr. Engman's daughters are entitled to none of the proceeds from the Sun-Da-Go sales because Ms. Leverich's transfer was invalid, and because the debts attributable to the Sun-Da-Go properties negate the sale proceeds. The record indicates that the bankruptcy court considered these arguments and how they beared on the strength of Ms. Scruggs' and Ms. Jousma's claims. Ultimately, the bankruptcy court approved the Trustee's proposed settlement. Appellants contend the bankruptcy court erred in, *inter alia*, its application of state property law, the Michigan Condominium Act, state joint venture law, state law on capital contributions, and the Uniform Partnership Act. (*See* Appellants' Brief, docket # 15, at 14-18, 29-34.)

Appellants' arguments misunderstand the bankruptcy court's role in the settlement approval process. "In considering a proposed settlement, the bankruptcy court is not resolving issues. The court is merely identifying and clarifying issues so that it can make an informed decision on the reasonableness of the settlement." *In re Bell & Beckwith*, 87 B.R. 476, 479 (N.D. Ohio). The bankruptcy court does not substitute its judgment for the Trustee's; it asks only whether the Trustee's proposed course of action is fair and equitable or in the best interests of the estate. *Id.*; *Fishell*, 1995 WL 66622 at *3. This process does not, and should not, require a conclusive determination of the legal rights of the parties. *See id.* Such a process "would be virtually indistinguishable from trial, which is the very thing the compromise was designed to avoid." *Fishell*, 1995 WL 66622 at *4.

The bankruptcy process favors compromise because it "allows the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Id.* at *2 (quoting *In re A&C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986)). That is exactly what happened here. Trustee Boyd evaluated the strengths and weaknesses of Ms. Scruggs' and Ms. Jousma's claim, and he structured an appropriate settlement. Other than Ms. Ludwick, no creditor objected to the settlement. The bankruptcy judge conducted an evidentiary hearing to independently apprise himself of the details of the settlement agreement, and the record is clear that he considered the various factors affecting the reasonableness of that agreement. Nothing more is required.[2] *Id.*

---

[2] The bankruptcy court considered whether each of the five proposed settlements was "the best alternative available to the estate" and also whether the distributions complied with the Trustee's fiduciary duties to the estate. (Bench Opinion at 12.) The Court notes that the Sixth Circuit Bankruptcy Appellate Panel has expressly rejected use of the fiduciary duty standard in evaluating bankruptcy settlements. *See In re Anderson*, 377 B.R. at 872-73. In this case however, use of the standard does not appear to have affected in any way the outcome of this case. The bankruptcy court's "best alternative" standard, combined with the fiduciary duty standard, subsume any inquiry necessary under the "fair and equitable" standard approved by the *Anderson* Court.

at *3; *A&C Properties*, 784 F.2d at 1380-81; *In re Anderson*, 377 B.R. 865, 875 (6th Cir. BAP 2007). Consequently, this aspect of the bankruptcy court's judgment is affirmed.

## CONCLUSION

The December 19, 2008 Order of the bankruptcy court (Record Item # 5) is affirmed. The bankruptcy court's decision to approve the various settlement agreements in the specified amounts was not an abuse of discretion. To the contrary, the bankruptcy court thoroughly considered all relevant factors. Its decision is fully supported by the record.


Dated:     July 6, 2009                               /s/ Robert J. Jonker
                                                      ROBERT J. JONKER
                                                      UNITED STATES DISTRICT JUDGE